**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION AT LAFAYETTE**

| | | |
|---|---|---|
| CAITLIN A. RAMSEY, | ) | |
|     Plaintiff, | ) | |
| | ) | |
|     v. | ) | CAUSE NO.: 4:25-CV-41-JEM |
| | ) | |
| FRANK BISIGNANO, Commissioner | ) | |
| of the Social Security Administration, | ) | |
|     Defendant. | ) | |

**OPINION AND ORDER**

This matter is before the Court on a Complaint [DE 1] filed by Plaintiff Caitlin A. Ramsey on June 26, 2025, and Plaintiff's Opening Brief [DE 14], filed October 6, 2025. Plaintiff requests that the decision of the Administrative Law Judge be reversed and remanded for further proceedings. On January 20, 2026, the Commissioner filed a response, and Plaintiff filed a reply on January 30, 2026. For the following reasons, the Court remands the Commissioner's decision.

## I.    Background

On October 19, 2020, Plaintiff filed an application for benefits with alleged onset date of July 24, 2020. Her claims were previously appealed to this court and remanded back to the ALJ for additional analysis. On October 3, 2024, Administrative Law Judge ("ALJ") Leeanne Foster held a video hearing, supplemented by a phone hearing on February 11, 2025. Plaintiff, represented by an attorney, and a medical expert ("ME") and a vocational expert ("VE") also testified. On February 28, 2025, the ALJ issued a decision finding that Plaintiff was not disabled.

The ALJ made the following findings under the required five-step analysis:

1.    The claimant meets the insured status requirements of the Social Security Act through December 31, 2025.

2.    The claimant has not engaged in substantial gainful activity since July 24, 2020, the alleged onset date.

3.      The claimant has the following severe impairments: morbid obesity, fibromyalgia, headaches/migraine, history of lumbar spine disc bulges, diabetes, obstructive sleep apnea, unspecified depressive disorder, PTSD, ADHD, unspecified anxiety disorder, and borderline personality disorder.

4.      The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5.      The claimant has the residual functional capacity to perform sedentary work except that the claimant can never climb ladders, ropes, or scaffolds. The claimant can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. The claimant can never work around unprotected heights. She can have occasional concentrated exposure to humidity, wetness, fumes, odors, dusts, and gases, and occasional exposure to extreme heat. The claimant can and must avoid concentrated exposure to wet, slippery surfaces. The claimant can understand, remember, and carry out simple instructions and make simple work-related decisions. She can tolerate occasional changes in the work setting. She can have occasional interaction with coworkers and supervisors, but to limit the duration and intensity of these interactions, work should focus on things rather than people. She can have no interactions with the public.

6.      The claimant is unable to perform any past relevant work.

7.      The claimant was a younger individual age 18-44 on the disability onset date.

8.      The claimant has at least a high school education.

9.      Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled.

10.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant could perform.

11.     The claimant has not been under a disability as defined in the Social Security Act from July 24, 2020, through the date of the decision.

The ALJ's decision is the final decision of the Commissioner.

The parties filed forms of consent to have this case assigned to a United States Magistrate

Judge to conduct all further proceedings and to order the entry of a final judgment in this case.

Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

## II.    Standard of Review

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ "will reverse an ALJ's decision only if it is the result of an error of law or if it is unsupported by substantial evidence." *Tutwiler v. Kijakazi*, 87 F.4th 853, 857 (7th Cir. 2023). "A reversal and remand may be required, however, if the ALJ committed an error of law, or if the ALJ based the decision on serious factual mistakes or omissions." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014). At a minimum, "[a]n ALJ must provide an adequate 'logical bridge' connecting the evidence and [the] conclusions, but an ALJ's opinion need not specifically address every single piece of evidence." *Tutwiler*, 87 F.4th at 857 (quoting *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010)).

## III.    Analysis

Plaintiff argues that the ALJ erred in her analysis of the examining physician's and state agency psychologists' opinions and failed to meet her burden of demonstrating significant job numbers. The Commissioner argues that substantial evidence supports the ALJ's analysis.

The ALJ found the opinion of examining physician Dr. Bangura to be "not persuasive." AR 1019. Plaintiff argues that the explanation the ALJ gave for this finding is illogical and erroneous. Dr. Bangura opined that Plaintiff demonstrated difficulty in several areas: sustained concentration, persistence, memory, working with others, and in social interactions, AR 775, and opined that she "may need psychiatric evaluation" AR 778. The ALJ rejected the mental limitations because "the

medical consultative examiner is not qualified to give those assessments," instead finding that "[t]he psychological medical expert and State agency opinions are more persuasive." AR 1019. Plaintiff argues that the ALJ ignored the fact that Dr. Bangura's observations about Plaintiff's mental limitations are consistent with other mental health evidence in the record, including Dr. Heroldt's consultative psychological examination. Dr. Heroldt found that Plaintiff had "below average" memory and had "mild difficulty" with simple arithmetic calculations, and diagnosed her with bipolar disorder with "Short-duration hypomanic episodes and major depressive episodes, with Mood Incongruent Psychotic Features," as well as "Borderline Personality Disorder" and "Other Specified Anxiety Disorder." AR 761-2. In addition to the similarities with the mental health expert opinion, Plaintiff also argues that the ALJ erred in rejecting Dr. Bangura's mental health observations because they were not limited to the area of her specialty. Although a specialist's opinion in their area of specialty "may be more persuasive about medical issues related to his or her area of specialty," that does not mean that opinions outside their area of specific expertise should be disregarded altogether. 20 CFR 404.1520c(c)(4). In this case, Dr. Bangura examined Plaintiff, and her opinion appears to be consistent with that of Dr. Heroldt. The ALJ did not specifically identify which state agency opinions she found to be more persuasive, but the Court notes that "[a]n ALJ can reject an examining physician's opinion only for reasons supported by substantial evidence in the record; a contradictory opinion of a non-examining physician does not, by itself, suffice." *Vanprooyen v. Berryhill*, 864 F.3d 567, 573 (7th Cir. 2017) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

The ALJ also found that Dr. Bangura's report of Plaintiff's physical limitations, particularly that she would not be capable of performing full-time work, to be "not supported by the consultative examination report itself." AR 1019. She then listed a number of findings from the

exam, including diminished lung sounds, irregular heartbeat, reduced grip strength, "limited range of motion of the lumbar spine and edema to the knees," AR 1019, all of which seem to the Court to indicate limitations. She then listed a number of areas in which Plaintiff was not limited, "[b]ut cataloguing is no substitute for analysis or explanation." *Smith v. Astrue*, No. 09 C 6210, 2011 WL 722539, at *12 (N.D. Ill. Feb. 22, 2011). The ALJ did not explain how the fact that Plaintiff could walk a few steps in the office and did not need an assistive device made up for the clinical findings of limitation, nor did the ALJ specifically identify the opinions of other treating or examining physicians that are inconsistent with Dr. Bangura's physical assessment.

The Court is unable to trace the logic in the ALJ's analysis, which raises concerns that she cherry-picked evidence in support of a finding of non-disability rather than adequately addressing the weight to be given to examining specialists. 20 C.F.R. § 404.1520c(c)(3)(i)-(v) (requiring the ALJ to take into account the length and extent of the treatment relationships, as well as the fact that "[a] medical source may have a better understanding of [the claimant's] impairment(s) if he or she examines [the claimant] than if the medical source only reviews evidence in [their] folder"); *see also Martin v. Saul*, 950 F.3d 369, 375 (7th Cir. 2020) (expressing disapproval where "ALJ assigned little weight to every medical opinion related to physical conditions except for the one provided by . . . an agency physician who never examined [the plaintiff]"); *Kaminski v. Berryhill*, 894 F.3d 870, 874–75 (7th Cir. 2018), amended on reh'g (Aug. 30, 2018) ("The judge also impermissibly cherry-picked evidence. Specifically, the judge appears to have overlooked the consulting psychologist's report . . . yet relied heavily on the reports of doctors who did not examine [plaintiff] but who opined that he could work with some restrictions.").

The concerns about cherry-picking evidence continue to the ALJ's assessment of Plaintiff's RFC. The state agency psychologists who, as described above, the ALJ generally relied on and

found to be "supported by the evidence," AR 1018, opined that Plaintiff "would not be able to manage contact with the public and would "work best alone [or] in semi-isolation from others." AR 75, 87. The Appeals Council remanded an earlier opinion on the grounds that the ability to have "occasional interaction with coworkers" was inconsistent with the opinions of administrative psychological consultants – who were therein considered, as in this ALJ's opinion, to be "generally persuasive"—"that the claimant 'would appear to work best alone, in semi-isolation from others or as part of a small group.'" AR 1145. The Counsel found this error to be "particularly significant because the vocational expert testified that the three representative jobs identified at step 5 are not performed semi-isolated." AR 1145. The council also remonstrated that "the decision did not discuss the required supportability factor when evaluating these opinions as required by 20 CFR 404.1520(c)." AR 1145-46.

Rather than address that inconsistency in this opinion, the ALJ instead rejected the findings that Plaintiff needs to work in semi-isolation. The ALJ explained that "there is some inconsistency with the updated medical evidence that the State agency was not privy to" so she "made some changes in the residual functional capacity." AR 1019. When a residual functional capacity assessment conflicts with a medical source opinion, the Social Security Administration requires its adjudicators to explain the decision not to adopt the opinion. SSR 96-8p, 1996 WL 374184, at *6-7 (July 2, 1996) ("The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations) . . . The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved [and] . . .[i]f the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted."); *see also Hulett v. Acting Comm'r*

*of Soc. Sec.*, No. 3:21-CV-971 JD, 2022 WL 18399609, at *3 n.1 (N.D. Ind. Dec. 19, 2022) (noting that although a term was "undefined by agency regulations, [it] is certainly quantifiable if defined, and is likely vocationally relevant given it was used by two state agency psychological consultants in assessing [the plaintiff]'s limitations"). The ALJ did not identify the "updated medical evidence" nor explain how it differs, although it appears she was referring to the opinion of another non-examining consultant, not a treating or examining source.

Throughout the ALJ's opinion, there are examples of inadequate reasoning and failure to follow the requirements for weighing medical evidence. The ALJ failed to adequately address the medical opinions in the record in accord with the relevant regulations and dismissed portions of the record that might result in disability without sufficient explanation, raising significant concerns that she reasoned backwards from a finding of ability to work to the RFC. *Phillip G. v. King*, No. 23-CV-2328, 2025 WL 306338, at *2 (N.D. Ill. Jan. 27, 2025) ("the ALJ's decision to dismiss evidence and testimony because it is inconsistent with the RFC the ALJ himself constructed is circular and unavailing") (quotation omitted); *Reindl v. Astrue* , No. 09 C 2695, 2010 WL 2893611, at *12 (N.D. Ill. July 22, 2010) ("[T]he ALJ's refusal to consider [a physician]'s opinion to the extent it was inconsistent with the RFC the ALJ adopted puts the cart before the horse. The ALJ is not at liberty to first create an RFC and then disregard the evidence that may contradict it. Rather, the ALJ must determine the RFC based on a consideration of all relevant evidence presented in the record."). Whether the ALJ was erroneously "succumb[ing] to the temptation to play doctor," *Deborah M. v. Saul*, 994 F.3d 785, 790 (7th Cir. 2021) (quoting *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996)), or merely failing to adequately identify the evidence she relied upon, there is no logical bridge from the evidence to the conclusion.

7

Plaintiff also argues that, even if she can work at the level described in the RFC, the ALJ erred in finding that the relatively small number of jobs constitutes work which exists in the national economy within the meaning of 42 U.S.C. § 423(d)(2)(A); *see Kordeck v. Colvin*, No. 2:14-CV-431-JEM, 2016 WL 675814, at *9 (N.D. Ind. Feb. 19, 2016) (document preparer among the "jobs that have been reduced significantly in number if not rendered obsolete by the rise of the internet"); *Browning v. Colvin*, 766 F.3d 702, 709 (7th Cir. 2014) (questioning the appropriateness of relying on "job descriptions used by the Social Security Administration come from a 23-year-old edition of the Dictionary of Occupational Titles, which is no longer published, and mainly moreover from information from 1977"). The case is being remanded for reevaluation of Plaintiff's RFC, but on remand the Court reminds the ALJ that "[a]t step 5, the burden shifts to the Commissioner to show that the claimant can perform some other kind of substantial gainful employment that exists in adequate numbers in the national economy." *Kasarsky v. Barnhart*, 335 F.3d 539, 543 (7th Cir. 2003).

## IV.    Conclusion

For the foregoing reasons, the Court **GRANTS** the relief requested in Plaintiff's Opening Brief [DE 14] and **REMANDS** this matter for further proceedings consistent with this opinion.

SO ORDERED this 15th day of July, 2026.

s/ John E. Martin
MAGISTRATE JUDGE JOHN E. MARTIN
UNITED STATES DISTRICT COURT

cc:     All counsel of record